UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TORREY T. LINDSEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:12CV225 RWS(ACL) |
| | ) |
| TERRY RUSSELL, | ) |
| | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition of Torrey T. Lindsey for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**Procedural History**

The Petitioner, Torrey T. Lindsey, is presently incarcerated at Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of the City of St. Louis, Missouri. (Respondent's Exhibit B at 41-44.) On July 8, 2009, following a jury trial, Lindsey was found guilty of trafficking crack cocaine in the second degree. (Respt's Ex. A at 11, 334.) Lindsey was sentenced to fourteen years imprisonment. Id. at 341.

Following his conviction in State court, Lindsey raised two points on direct appeal. In his first point, Lindsey argued that the trial court erred in overruling his objection to testimony regarding an anonymous tip on the ground of hearsay. (Respt's Ex. C at 15.) In his second point, Lindsey argued that the trial court plainly erred in sustaining the state's hearsay objection and

precluding defense witnesses from testifying. Id. at 16. The Missouri Court of Appeals for the Eastern District affirmed Lindsey's conviction on May 11, 2010. (Respt's Ex. F.)

Lindsey filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15. (Resp't Ex. G at 3-10.) After the appointment of counsel, Lindsey filed a First Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing. Id. at 14-25. In the amended motion, Lindsey raised the following ineffective assistance of counsel claims: (1) trial counsel did not access the records of the jurors, which led to errors in jury selection; (2) trial counsel failed to give notice of the address of witness Fenton Bailey; (3) trial counsel failed to object to the prosecutor's comment in opening statement that Lindsey was selling drugs; (4) trial counsel failed to obtain a limiting instruction regarding the anonymous tip; (5) trial counsel failed to object to identification of Lindsey as beyond the scope of cross examination when the prosecutor neglected to ask for it on direct examination; (6) trial counsel failed to conduct an adequate investigation; (7) trial counsel committed errors in presenting the motion to suppress; (8) trial counsel failed to interview key witnesses; (9) appellate counsel failed to raise on appeal the issues indicated above, which trial counsel did not object to, as "plain error"; and (10) appellate counsel failed to apply for transfer to the Missouri Supreme Court or to seek a writ of certiorari from the United States Supreme Court. Id. The motion court denied Lindsey's motion and his request for an evidentiary hearing. Id. at 28-35.

Lindsey raised a single claim on appeal from the denial of post-conviction relief. Lindsey argued that trial counsel was ineffective in failing to investigate or seek a limiting instruction regarding the anonymous tip. (Respt's Ex. H.) The Missouri Court of Appeals for the Eastern District affirmed the denial of post-conviction relief. (Respt's Ex. J.)

On February 6, 2012, Lindsey, pro se, filed the instant Petition for a Writ of Habeas Corpus. (Doc. 1.) Lindsey raises three grounds for relief. In his first ground for relief, Lindsey argues that the trial court erroneously admitted hearsay regarding a statement made by an anonymous tipster. In his second ground for relief, Lindsey contends that the trial court plainly erred in excluding hearsay statements offered by two defense witnesses. In his third ground for relief, Lindsey argues that trial counsel was ineffective for failing to investigate or seek a limiting instruction regarding the anonymous tip. On May 24, 2012, Respondent filed a Response to Order to Show Cause, in which he argues that Lindsey's claims fail on their merits. (Doc. 7.) Lindsey also filed a Traverse, in which he provides further argument in support of his claims. (Doc. 12.)

**Facts**

The Missouri Court of Appeals summarized the relevant facts as follows:

> During the week of April 9, 2007, the Crime Suppression Unit (CSU) of the St. Louis Police Department (SLPD) received a tip from an anonymous caller that [Lindsey], who drove a red and white older model Blazer, sold drugs in the 2000 block of Agnes. The CSU passed this tip on to Officer Martin Garcia (Garcia) and Detective Joe Steiger (Steiger), who commenced surveillance on that block. During their surveillance, they noticed a vehicle matching the described Blazer enter the block and park on the street. The driver of the vehicle sat for several minutes before getting out and walking to a house on one side of the street, which he never entered.
> The officers ran the vehicle's license plate which revealed the car belonged to [Lindsey]. The officers pulled up [Lindsey]'s driver's license to obtain his photo. The photo on the driver's license matched the driver of the vehicle.
> On April 17, 2007, Garcia and Steiger were conducting surveillance again on Agnes when [Lindsey] pulled up in the vehicle, parked and sat. The officers decided to approach [Lindsey]. As they approached, [Lindsey] opened his car door. His left hand was on the steering wheel and his right hand was in his lap, and he was looking in the officers' direction. After making eye contact with Garcia, [Lindsey] dropped a white object and started scraping his right foot back on the floorboard of the car in the area where the object had dropped. Garcia noticed the object appeared to be wrapped in cellophane and suspected it was crack cocaine.

> Garcia arrested [Lindsey] and advised him of his Miranda rights. [Lindsey] was transported to the police station and booked. Garcia found $287 on [Lindsey]. After testing the white object, the SLPD Crime Lab determined it to be 21.30 grams of crack cocaine. [Lindsey] was then charged by indictment, as a prior and persistent offender and prior and persistent drug offender, with second-degree trafficking.
>
> Prior to trial, [Lindsey] filed a motion *in limine* seeking to keep out information that the police received an anonymous tip that [Lindsey] was involved in the sale of drugs. The State argued that the information was admissible to explain why the police had placed [Lindsey] under surveillance. The trial court ruled that it would allow the information into evidence for that purpose.
>
> Under direct examination, over [Lindsey]'s objection, Garcia testified that he had been given a tip by his direct supervisor that [Lindsey], who lived at or frequented the 2000 block of Agnes and drove a red and white older model Blazer, was involved in drug transactions on that block. Garcia testified that based on that tip, he and Steiger conducted surveillance in that area, which ultimately led to the arrest of [Lindsey] on April 17, 2007. On redirect, over [Lindsey]'s objection, Garcia testified that it was common to receive anonymous tips, and that the majority of the tips the police received were anonymous because people were afraid of retaliation. Steiger also testified that they had received information from their sergeant about drug sales in the neighborhood.
>
> During closing argument, the State declared that there had been "an anonymous tipster, someone who was fed up with having this going on in their area, called and left a tip with the police." The State said after [Lindsey] was observed and then confronted, the officers learned the tip was true. The State remarked that trial counsel "said anybody can leave a tip. Honestly, I guess anybody could leave a tip. That's not what happened in this case, because we know the information in that tip was right. It was true. We know that."
>
> The jury found [Lindsey] guilty as charged. Having previously found [Lindsey] to be a prior and persistent offender and prior and persistent drug offender, the trial court sentenced him to fourteen years without the possibility of parole.

(Respt's Ex. J at 2-4.)


## Discussion

**A.     Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681

(8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Owens, 198 F.3d at 681 (quoting 28 U.S.C. §2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413; see also Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006); Rousan v. Roper, 436 F.3d 51, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

## B.     Ground One

In his first ground for relief, Lindsey argues that the trial court erroneously admitted hearsay regarding a statement made by an anonymous tipster.

As previously noted, Lindsey filed a motion in limine seeking to exclude evidence that police received an anonymous tip that Lindsey was involved in the sale of drugs. (Respt's Ex. A at 149.)  The State argued that the information was admissible to demonstrate subsequent conduct of the police offers.  Id. at 150.  The court denied Lindsey's motion in limine.  Id.

The following testimony was elicited from Officer Martin Garcia on direct examination:

> [PROSECUTOR]: And what were you doing on that evening?
>
> [OFFICER GARCIA]: On that evening, I was investigating a tip that—
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to renew my earlier motion.
>
> THE COURT: All right.  Your motion is overruled.  You may answer.
>
> [OFFICER GARCIA]: I was investigating a tip that had been passed along through an anonymous person to my direct supervisor, my sergeant, and then passed to my partner and I.
>
> [PROSECUTOR]: When did you receive that information?
>
> [OFFICER GARCIA]: We received that information early in the previous week, the week of the 9th.  Is—I don't remember the exact date or time, but it was in that previous week.
>
> [PROSECUTOR]: What information did you receive?
>
> [OFFICER GARCIA]: That there was a subject named Torrey Lindsey who lived or frequented the 2000 block of Agnes, he drove a red and white older model Blazer, and was involved in drug transactions in that block.
>
> [PROSECUTOR]: What do you do when you get a tip like that?

> [OFFICER GARCIA]: In this case, since that's—since a narcotics violation isn't our main directive, we responded to that area and conducted several surveillances during the week of April 9th.

(Respt's Ex. A at 168-69.)

Lindsey raised this claim on direct appeal. The Missouri Court of Appeals held that Officer Garcia's testimony regarding the information provided by the anonymous tipster was admitted to explain the subsequent police conduct of Officer Garcia and his partner rather than for its truth. (Respt's Ex. F at 2-3.) The court further held that no prejudice resulted from the admission of the testimony. Id. at 3-4. The court noted that Officer Garcia testified he saw Lindsey drop a white object, later identified as crack cocaine, to the floor board of his vehicle and try to scrape it under the seat with his foot. Id. at 4. The court stated that Officer Garcia's partner testified that he saw Officer Garcia take the baggie containing crack cocaine out of Lindsey's vehicle. Id. The court concluded that, "[c]onsidering the testimony from Officer Garcia and his partner, we cannot conclude the testimony concerning the anonymous tip so influenced the jury that the jury would have reached a different outcome but for that testimony." Id.

"'It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Brown v. Luebbers, 371 F.3d 458, 466 (8th Cir. 2004) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir.) (quotation omitted). Federal courts:

> will reverse a state court evidentiary ruling only if the "petitioner . . . show[s]

that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety the verdict probably would have been different."

Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. Mo. 1995) (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)).

The undersigned finds that the Missouri Court of Appeals' determination is not contrary to, nor does it involve an unreasonable application of, clearly established Federal law. Lindsey is only entitled to federal habeas relief upon a showing that a state court's evidentiary ruling infringes upon a specific constitutional protection or the ruling is so prejudicial that it denies a petitioner of his or her right to due process. Id. The Missouri Court of Appeals found that Officer Garcia's testimony was admissible under state law, because it was offered to explain subsequent police conduct rather than for the truth of the facts asserted. The court further found that the admission of Officer Garcia's statements did not prejudice Lindsey due to the evidence presented at trial of Lindsey's guilt. Lindsey has made no showing to the contrary.

Thus, the undersigned recommends that Lindsey's first ground for relief be denied.

**B.**     **Ground Two**

In his second ground for relief, Lindsey argues that the trial court plainly erred in excluding hearsay statements offered by defense witnesses Tanya Artis and Fenton Bailey regarding what officers said during and after Lindsey's arrest. Lindsey contends that the trial court erred in sustaining the State's objections on the grounds of hearsay.

Respondent argues that this ground is procedurally defaulted, because Lindsey concedes that he did not preserve this claim for review and that the Missouri Court of Appeals reviewed for plain error only.

In the Eighth Circuit there is an "oft-noted, yet surprisingly persistent split of authority about whether [a state appellate court's] plain error review 'cures' [any] procedural default" that may result from such review. See Shelton v. Purkett, 563 F.3d 404, 408 (8th Cir. 2009) (citations omitted). There is also a split of authority "regarding the appropriateness of plain-error review in the habeas context." See Toua Hong Chang v. Minnesota, 521 F.3d 828, 832 n.3 (8th Cir. 2008). In both Shelton and Toua Hong Chang, the Eighth Circuit applied the AEDPA standard of review to the court's consideration of the merits of the claims that had been considered by the state courts under plain error review only. Shelton, 563 F.3d at 407-08 (not resolving the procedural default issues and concluding, based on the assumption the claims were subject to review, that "the AEDPA mandates a deferential review of a state court decision"); Toua Hong Chang, 521 F.3d at 831-33 (declining to apply plain-error analysis and instead applying analysis under Brecht v. Abrahamson, 507 U.S. 619 (1993), which "subsumes" the AEDPA test). Based on this case law, the Court finds that this ground should not be denied as procedurally defaulted, and the Court will apply the AEDPA's standard of review when reviewing this claim.

On plain error review, the Missouri Court of Appeals noted that the trial court properly found that the testimony from Artis and Bailey concerning statements made by police officers was inadmissible hearsay. (Respt's Ex. F at 5.) The court further found that, even if the testimony could be considered admissible, the exclusion of the testimony was harmless error. Id. The court stated:

> Here, as previously noted, the defense theory was that [Lindsey] was framed by the police officers in an attempt to secure his cooperation in a separate investigation concerning stolen guns. The excluded testimony from Artis and Bailey regarding statements they heard the police officers make during their interaction with [Lindsey] was not necessary to establish this defense. Instead, the testimony was merely cumulative of the testimony from Betty Lindsey, [Lindsey]'s mother. Betty Lindsey testified one of the officers told her they were asking [Lindsey] about two individuals who stole guns. According to Betty Lindsey, the officer said if [Lindsey] would tell them who stole the guns they would let him go. In further support of the defense's theory, Artis testified she saw the police officers approach [Lindsey]'s vehicle, and she did not see the police officers take anything out of the car. [Lindsey] also testified he saw the police show photographs to [Lindsey] before searching [Lindsey]'s car. Bailey testified he did not see the police remove anything from the vehicle.
>
> Any testimony regarding the police officers' conversation with [Lindsey] would have been cumulative to the testimony of Betty Lindsey. Moreover, the exclusion of such testimony did not prejudice the defense theory because the testimony of Betty Lindsey, Artis, and Bailey clearly presented the theory to the jury regarding the police officers' alleged attempt to secure [Lindsey]'s cooperation with their investigation of stolen guns. Therefore, the trial court did not plainly err in excluding the testimony of Artis and Bailey concerning statements made by the police officers. Point two is denied.

Id. at 5-6.

As noted with regard to Lindsey's first ground for relief, whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited jurisdiction. See Estelle, 502 U.S. at 67. A federal issue is raised only where trial errors infringe on a specific constitutional protection, or are so prejudicial as to amount to a denial of due process. Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting Adail v. Wyrick, 711 F.2d 99, 102 (8th Cir. 1983)).

The trial court's decision did not create a denial of due process. Furthermore, the appellate court's opinion was not contrary to, nor was it an unreasonable application of, clearly established federal law. Lindsey is unable to demonstrate that the exclusion of testimony of Artis and Bailey, which was cumulative of the testimony of his mother, was prejudicial.

Accordingly, the undersigned recommends that Lindsey's second ground for relief be denied.

**C.      Ground Three**

In his third ground for relief, Lindsey argues that trial counsel was ineffective for failing to investigate or seek a limiting instruction regarding the anonymous tip.

Lindsey raised this claim in his post-conviction motion and in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals held as follows:

> The motion court's findings are not clearly erroneous. The trial court allowed information about the anonymous tip into evidence to explain why the police had placed [Lindsey] under surveillance. Evidence of the tip was admissible to explain subsequent police conduct, and provide the jury with a portrayal of the events in question so that the jury was not called upon to speculate on the cause or reasons for the officers' subsequent activities. State v. McGee 284 S.W.3d 690, 701 (Mo.App. E.D. 2009).
> Additionally, [Lindsey] had ample opportunity, of which his trial counsel took advantage by eliciting the testimony of [Lindsey], Artis and Bailey at trial, to present his defense that the tip was a ruse and that the officers actually framed him for the drug trafficking charge because they wanted information on gun crimes.
> Finally, this Court has already found on [Lindsey]'s direct appeal that excluding the anonymous tip altogether would not have changed the outcome of the trial. State v. Lindsey, 309 S.W.3d 873 (Mo.App. E.D. 2010) (memorandum supplementing order affirming judgment pursuant to Rule 84.16(b)). Issues decided upon direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding. Ayres v. State, 93 S.W.3d 827, 832 (Mo.App. E.D. 2002). A limiting instruction on the jury's consideration of the anonymous tip would have even less potential than outright exclusion to change the outcome of the trial. With no effect on the outcome of the trial, there is no prejudice to [Lindsey] and thus he was not entitled to an evidentiary hearing on the matter. Starks, 856 S.W.2d at 336. For the same reason, counsel was not ineffective for failing to obtain a limiting instruction. Harris, 870 S.W.2d at 814.

(Respt's Ex. J at 8.)

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the Strickland standard: petitioner must demonstrate that his counsel's performance was deficient

and that he was prejudiced by that performance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney.  Strickland, 466 U.S. at 687.  To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Federal habeas review of a Strickland claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable - a substantially higher threshold."  Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

Lindsey cannot show that his counsel's failure to investigate or seek a limiting instruction regarding the anonymous tip resulted in the prejudice required to satisfy the second prong of Strickland.  As previously discussed, the Missouri Court of Appeals on direct appeal held that exclusion of the testimony regarding the anonymous tip would not have changed the outcome of the trial in light of the strong evidence of Lindsey's guilt.  (Respt's Ex. J at 8.)  The court, in the post-conviction appeal, noted that "[a] limiting instruction on the jury's consideration of the anonymous tip would have even less potential than outright exclusion to change the outcome of the trial."  Id.  Lindsey is not entitled to relief, because the Court finds the state court's determination under the second prong of Strickland was reasonable.  As a result, the Court need not address the first prong of the Strickland test.

Accordingly, the undersigned recommends that Lindsey's third ground for relief be denied.

**D.     Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.   See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

In this case, Lindsey has failed to make a substantial showing of the denial of a constitutional right.   The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the Petition of Torrey T. Lindsey for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.   See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated:   February 9, 2015

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE